UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HENRY PERRY SIRECI,

       Petitioner,

v.                                  CASE NO. 6:02-cv-1160-Orl-35KRS

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

_____

**ORDER**

       This case is before the Court on the Amended Petition for Habeas Corpus Relief (Doc. No. 38) filed by Henry Perry Sireci. Pursuant to the instructions of the Court, Respondents filed a Response to Amended Petition for Writ of Habeas Corpus (Doc. No. 50). Thereafter, Petitioner filed a Reply to the Response (Doc. No. 56). As discussed hereinafter, the amended habeas petition is denied.

**I.    STATEMENT OF THE FACTS**

       The facts adduced at trial, as set forth by the Supreme Court of Florida, are as follows:

       The defendant, Sireci, went to a used car lot, entered the office, and discussed buying a car with the victim Poteet, the owner of a car lot. . . .

       The defendant was armed with a wrench and a knife. A struggle ensued. The victim suffered multiple stab wounds, lacerations, and abrasions. An external examination of the body revealed a total of fifty-five stab and incisive wounds, all located on the chest, back, head, and extremities. The stab wounds evoked massive external and internal hemorrhages which were the cause of death. The neck was slit.

       The defendant told his girlfriend, Barbara Perkins, that he was talking

to the victim about a car, then he hit the victim in the head with the wrench. When the man turned around, the defendant asked where the money was, but the man wouldn't tell the defendant, so he stabbed the man. The defendant told Perkins that he killed Poteet. He admitted taking the wallet from the victim.

Harvey Woodall, defendant's cellmate when he was arrested in Illinois, testified that the defendant had described the manner in which he killed the victim. According to Woodall's testimony, the defendant hit the victim with a wrench, then a fight ensued in which the windows were broken, and the defendant stabbed the man over sixty times. The defendant stated that he wasn't going to leave any witnesses to testify against him and that he knew the man was dead when he left. The defendant told Woodall he got around $150.00 plus credit cards.

The defendant also described the crime to Bonnie Arnold. According to Arnold, the defendant stated that the car lot owner and he were talking about selling the defendant a car, when the defendant hit the victim with a tire tool. A fight began and the defendant stabbed the victim. The defendant told Arnold that he was going in to steal some car keys and then come back later to steal a car.

The defendant told David Wilson, his brother-in-law, that he killed the victim with a five or six-inch knife and took credit cards from the victim.

*Sireci v. State*, 399 So. 2d 964, 966-67 (Fla. 1981).

## II.  PROCEDURAL HISTORY

Petitioner was charged by indictment with one count of first-degree murder. (Ex. A-1 at 2.)[1]  After a jury trial, Petitioner was found guilty as charged on October 22, 1976. (Ex. A-1 at 196.)  The jury further recommended that the trial court impose the death penalty upon Petitioner.  (Ex. A-2 at 274.)  The trial judge concurred with the jury's recommendation and sentenced Petitioner to death. (Ex. A-2 at 294-98.)

On direct appeal, Petitioner raised seven claims. (Ex. A-22.)  The Supreme Court

---

[1]References to the record will be made by citing to the particular volume and page of the advanced appendix.  For example, "Ex. A at 1" refers to page one of the volume labeled Exhibit A.

of Florida affirmed Petitioner's conviction and sentence. *Sireci v. State*, 399 So. 2d 964 (Fla. 1981). Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied. (Ex. B-4.)

On September 8, 1982, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. D-2 at 147-299.) After an evidentiary hearing, the trial court denied the motion. (Ex. D-5 at 863-89.) Petitioner appealed, and the Supreme Court of Florida affirmed. *Sireci v. State*, 469 So. 2d 119 (Fla. 1985).

Petitioner filed a second Rule 3.850 motion for postconviction relief. (Exs. F-1 & F-3.) The trial court ordered an evidentiary hearing on the motion, after which it granted the motion and ordered a new sentencing proceeding. (Ex. H-5 at 773-75.) The Supreme Court of Florida affirmed the trial court's decision. *State v. Sireci*, 536 So. 2d 231 (Fla. 1988).

Upon resentencing, on April 20, 1990, the jury recommended, by a vote of eleven to one, that the trial court impose the death penalty. (Ex. I-17 at 2559-60.) The trial judge concurred with the jury's recommendation and sentenced Petitioner to death. (Ex. I-26 at 3299.) On direct appeal, the Supreme Court of Florida affirmed Petitioner's sentence. *Sireci v. State*, 587 So. 2d 450 (Fla. 1991). Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied. *Sireci v. Florida*, 503 U.S. 946 (1992).

Petitioner filed a Rule 3.850 motion for postconviction relief as to his resentencing. The trial court conducted a *Huff*[2] hearing on January 21, 1999. Thereafter, on February

---

[2]*Huff v. State*, 622 So. 2d 982 (Fla. 1993).

9, 1999, the trial court denied the motion. (Ex. K-3 at 193-259.) Petitioner appealed, and the Supreme Court of Florida affirmed the trial court's decision. *Sireci v. State*, 773 So. 2d 34 (Fla. 2000).

Petitioner filed a state habeas petition. The Supreme Court of Florida denied the petition on February 28, 2002. *Sireci v. Moore*, 825 So. 2d 882 (Fla. 2002). The appellate court denied Petitioner's motion for rehearing. (Ex. L-6.)

Petitioner filed another Rule 3.850 motion for postconviction relief, which the trial court denied on January 13, 2003. (Ex. N-3.) Petitioner did not appeal the ruling.

Petitioner filed a motion to release physical evidence for DNA testing and an amended motion. (Exs. M-2 & M-4.) The trial court conducted a hearing on the motions and subsequently denied them as procedurally barred. (Ex. M-5.)

Petitioner then filed a motion for post-conviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure and Section 925.11, Florida Statutes. (Ex. M-6.) The trial court dismissed the motion without prejudice because it was not under oath. (Ex. M-7.) On March 13, 2003, Petitioner filed an amended motion for post-conviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure and Section 925.11, Florida Statutes, which the trial court denied. (Exs. M-8 & O-7 at 996.) Petitioner appealed, and the Supreme Court of Florida affirmed on April 28, 2005. *Sireci v. State*, 908 So. 2d 321 (Fla. 2005). Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied. *Sireci v. Florida*, 546 U.S. 1077 (2005).

## III.    GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A.     Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final"), *cert. denied*, 127 S. Ct. 1126 (2007).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[3]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Additionally, it is well established that a defendant has the right to effective counsel on appeal.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  The Eleventh

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). Thus, in order to establish ineffective assistance of appellate counsel, Petitioner must show (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

## C.     Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)     the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)     (i)     there is an absence of available State corrective process; or
>
> (ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## IV.    MERITS OF THE PETITION

### A.    Claim I

Petitioner asserts that the trial court erred during his resentencing proceeding by denying his motion for mistrial after the prosecutor violated a motion in limine by indicating

that Petitioner had been on death row. Petitioner further contends that the trial court erred by denying his motion to interview the jurors regarding the impact the prosecutor's statement had on the jury's deliberations.[4] Petitioner maintains that the prosecutor's conduct and the trial court's denial of his motions rendered the imposition of a sentence of death unconstitutional.

Petitioner raised this claim on direct appeal from resentencing. In denying the claim, the Supreme Court of Florida held:

> Determination of whether substantial justice warrants granting a mistrial is within the discretion of the trial judge. *Dufour v. State*, 495 So. 2d 154, 163 (Fla. 1986), *cert. denied*, 479 U.S. 1101, 107 S. Ct. 1332, 94 L. Ed. 2d 183 (1987); *Marek v. State*, 492 So. 2d 1055, 1057 (Fla. 1986). The prosecutor's remark violated the pretrial order. Nevertheless, prosecutorial improprieties must be viewed in the context of the record as a whole to determine if a new trial is warranted. *State v. Murray*, 443 So. 2d 955, 956 (Fla. 1984). Although a prior sentence should not play a role in resentencing proceedings, we have found no error where the record reflected that the impact of merely mentioning a prior death sentence was negligible. *Teffeteller v. State*, 495 So. 2d 744 (Fla. 1986).

> The prosecutor's reference to the prior death sentence was minimal. He did not indicate that a prior jury had recommended the death penalty. *See id.* at 747. Moreover, our analysis of a later colloquy with the court outside the presence of the jury leads us to conclude that the comment was inadvertent. In addition, the trial judge noted that any "halfway intelligent" juror would determine that Sireci had been sentenced to death previously for this crime. This was true for two reasons. First, most of the defense psychiatric information was accumulated while Sireci was on death row. Drs. Lewis and Pincus, mental health experts for the defense, had examined Sireci as part of a study of death row inmates. Although Dr. Lewis sought to avoid reference to death row during her testimony, it was impossible to

---

[4]In support of his motion to interview the jurors filed in the state court, Petitioner submitted an affidavit of one of his investigators, wherein the investigator attested that one of the jurors told him that the jurors were unaware that Petitioner was on death row prior to the prosecutor indicating such and that knowing Petitioner was previously on death row made it easier for them to recommend a sentence of death. (Ex. I-26 at 3407-08.)

eliminate such reference completely. Dr. Lewis testified during direct examination that she had conducted studies of death row inmates along with Dr. Pincus and others. She indicated that she had met Sireci as part of a study of men who had committed murder and that he was one of eight or ten individuals interviewed who were incarcerated in Starke. Jurors easily could have concluded from Dr. Lewis's direct examination that Sireci was part of the death row study. Second, given the time lapse between the conviction and the sentencing proceeding, it is likely that the jury would have suspected, if not known, that a death sentence had been imposed previously.

Based upon our review of the record, we find no abuse of discretion in the trial court's refusal to grant a mistrial. The prosecutor's reference to the prior death sentence did not prejudice the defendant or play a significant role in the resentencing proceeding so as to warrant a mistrial. *Teffeteller*, 495 So. 2d at 747.

Sireci also claims reversible error in the trial court's refusal to poll the jurors concerning their use of the knowledge of the prior death sentence. We note only that the Evidence Code prohibits judicial inquiry into the emotions, mental processes, or mistaken beliefs of jurors. § 90.607(2)(b), Fla. Stat. (1989); *State v. Hamilton*, 574 So. 2d 124, 128 (Fla. 1991).

*Sireci*, 587 So. 2d at 452-53.

The United States Supreme Court has held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985). Furthermore, when considering whether a prosecutor's statement resulted in a constitutional violation, courts must determine whether the statement "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637(1974)).

Additionally, pursuant to *Fry v. Pliler*, 551 U.S. 112 (2007), assuming there is a constitutional error, "if the state court . . . did not recognize that there was error, federal

habeas relief is still due to be denied if the constitutional error was harmless." *Hodges v. Attorney General, State of Fla.*, 506 F.3d 1337, 1343 (11th Cir. 2007) (citing *Fry*, 127 S. Ct. at 2328). Such an error will be deemed harmless unless it had a "substantial and injurious effect" on the jury's verdict. *Id.* (citing *Fry*, 127 S. Ct. at 2328); *see also Brecht v. Abrahamson*, 507 U.S. 619 (1993).

In the instant case, prior to Petitioner's resentencing proceeding, the trial court granted a motion in limine, thereby directing the State not to reveal that Petitioner had been sentenced to death previously for the victim's murder. During the prosecutor's cross-examination of Dr. Lewis, one of the defense's mental health experts, however, the following colloquy occurred:

> Q. : Maybe it's not a paranoid ideation, is that correct?
>
> A.: Maybe it's not, but I would put my reputation on the fact that it is. It is - I mean it's demonstrated. It's one of the research criteria.
>
> Q.: It's what you expected to find of this man on death row, isn't that correct?

(Ex. I-13 at 1673.) Defense counsel moved for a mistrial based on the prosecutor's reference to Petitioner's prior death sentence. The trial court denied the defense's motion, but admonished the prosecutor to refrain from making any further references to the prior death sentence.

The questions this Court must consider are whether the prosecutor's statement so infected the sentencing proceeding as to make Petitioner's death sentence unconstitutional and whether the prosecutor's statement was such that it impermissibly led the jury to believe that it was not responsible for determining the appropriateness of sentencing Petitioner to death. Finally, if the statement resulted in a constitutional violation, the Court

13

must determine whether the statement resulted in harmless error.

The record reveals that the prosecutor made only one inadvertent reference to Petitioner's prior death sentence. Moreover, the jury was aware that Petitioner had been convicted of the murder approximately fourteen years prior to his resentencing proceeding and that Petitioner was imprisoned at the Starke correctional facility. Additionally, prior to the prosecutor asking Dr. Lewis the question at issue, Dr. Lewis had testified that she had conducted studies of death row inmates. The state courts' determination that it was likely the jury would have suspected or known that Petitioner had previously been sentenced to death is, therefore, objectively reasonable.

Moreover, the trial court explicitly instructed the jury on the factors it was to consider when determining whether to recommend a sentence of death. The trial court advised the jury that it had the duty "to follow the law that will . . . be given to you by the court and render to the court an advisory sentence based upon [its] determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and, if they do, whether they are sufficient to outweigh any mitigating circumstances. . . ." (Ex. I-17 at 2539.) The trial court further instructed the jury that its advisory sentence should be based on the evidence that was presented. *Id*. The trial court informed the jury that if it did not find the existence of aggravating circumstances, then it should recommend an advisory sentence of life imprisonment; however, if it determined that aggravating circumstances existed, it must determine whether those aggravators outweighed the mitigating evidence. *Id*. at 2544. Finally, the trial court told the jury that its "verdict must be based solely on the evidence or lack of evidence and the law." *Id*. at 2545.

Given the trial court's instructions regarding what the jury was to consider in

14

reaching its verdict, the Court cannot conclude that the prosecutor's statement was such that it impermissibly led the jury to believe that it was not responsible for determining the appropriateness of sentencing Petitioner to death or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process. Accordingly, the state courts' determination was neither contrary to, nor an unreasonable application of, clearly established federal law.

With respect to the trial court's denial of Petitioner's request to interview the jurors, the Court notes that the Supreme Court of Florida relied on state laws which prohibit the questioning of jurors as to their deliberations. "[R]ules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself have repeatedly been applied in criminal cases and held constitutional." *Cole v. Crosby*, Case No. 5:05-cv-222-Oc-10GRJ, 2006 WL 1169536, *61 (M.D. Fla. May 3, 2006) *(*citing *Tanner v. United States*, 483 U.S. 107 (1987) (applying Federal Rule of Evidence 606(b) to exclude testimony of juror misconduct, including drug and alcohol use); *Sims v. Singletary*, 155 F.3d 1297, 1312-13 (11th Cir. 1998) (applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict itself).

In concluding that the state court did not err by refusing to allow defense counsel to continue questioning jurors post-trial after one juror testified that the jury talked about the fact that the defendant did not testify, the Eleventh Circuit held that such jury conduct is an example of a jury misunderstanding or failure to follow instructions of the court and is not subject to examination post-trial. *Sims*, 155 F.3d at 1312. In so ruling, the Court noted that the jury was instructed that the defendant was not required to testify and that

the prosecution had the burden of establishing guilt beyond a reasonable doubt. *Id.* at 1313. The *Sims* Court reasoned that it must be assumed "that the jury followed the instructions of the trial court." *Id.* at 1313 (citing *United States v. Chandler*, 996 F.2d 1073, 1088 (11th Cir. 1993) ("The jury is presumed to follow the instructions they are given."), *cert. denied*, 512 U.S. 1227 (1994)).

As discussed previously, in the instant case, the jury was explicitly instructed as to the factors it should consider in reaching the verdict. As such, the Court must presume that the jury followed those instructions. Moreover, Florida law prohibits questioning jurors about matters which "inhere in the verdict," such as whether the jury considered Petitioner's prior death sentence in recommending that death be imposed. *See Sims v. State*, 444 So. 2d 922, 925 (Fla. 1983). In sum, the Court concludes that Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, United States Supreme Court precedent. Accordingly, this claim is denied pursuant to Section 2254(d).

**B.     Claim II**

Petitioner asserts that application of the cold, calculated, and premeditated ("CCP") aggravator violated the *Ex Post Facto* Clause of the United States Constitution. In support of his argument, Petitioner asserts that the offense occurred in 1976 and the CCP aggravator was not enacted until 1979.

Petitioner raised this claim on direct appeal from his resentencing. The Supreme Court of Florida concluded that application of the CCP aggravator was not unconstitutional because the CCP aggravator merely reiterates the element of premeditation for the offense

of murder.  *Sireci*, 587 So. 2d at 455.

The Eleventh Circuit recently considered this issue in *Jennings v. McDonough*, 490 F. 3d 1230, 1251-56 (11th Cir. 2007).  The *Jennings* Court assumed, without deciding, that application of the CCP aggravator in a case like the instant one results in an *ex post facto* violation.  *Id*. at 1251.  In such instances, the Court held that harmless error review is appropriate even when the State has not performed a harmless error analysis.  *Id*. at 1251-53.  Harmless error review requires courts to determine whether constitutional errors at trial "'had a substantial and injurious effect or influence. . .'" on the jury's sentence.  *Id*. at 1253 (quoting *Brecht*, 507 U.S. at 637-38).

Unlike *Jennings*, in this case, the Supreme Court of Florida actually considered whether the application of the CCP aggravator would constitute harmless error.   In considering whether sufficient evidence existed to find the CCP aggravator, the Court noted:

> Even assuming, however, that insufficient evidence existed to support the trial court's finding this aggravating circumstance, four other valid aggravators exist in this case.  Among them are two of the most weighty in Florida's sentencing calculus-prior violent felony conviction and that the murder was heinous, atrocious, or cruel.  Therefore, even if the trial court had committed error in finding the cold, calculated, and premeditated aggravator here, which it did not, such would be harmless.  *See, e.g., Zack v. State*, 753 So. 2d 9 (Fla. 2000) (finding wrongful application of the avoiding a lawful arrest aggravator harmless error where four other valid aggravators-prior violent felonies; pecuniary gain; heinous, atrocious, and cruel; and cold, calculated, and premeditated-existed); *Guzman v. State*, 721 So. 2d 1155 (Fla. 1998) (upholding imposition of the death penalty where the trial court's finding the CCP aggravator was overturned, but the remaining four other aggravators-prior violent felony; committed in the course of a robbery; heinous, atrocious, or cruel; and avoiding arrest-existed); *Jimenez v. State*, 703 So. 2d 437 (Fla. 1997) (death sentence upheld where prior violent felony conviction; committed in the course of a robbery; committed while under community control; and heinous, atrocious, and cruel

aggravators were found).

*Sireci*, 825 So. 2d at 887.

As discussed *infra* in claims three, four, six, and seven, the Supreme Court of Florida properly concluded that Petitioner's sentence was supported by four valid aggravating factors- (1) Petitioner was previously convicted of another capital felony or a felony involving the use or threat of violence; (2) the murder was committed during a robbery and for pecuniary gain; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest by eliminating a witness; and (4) the murder was especially heinous, atrocious, or cruel ("HAC")- and by the absence of statutory mitigators. Moreover, upon review of the evidence and closing argument offered in support of the CCP aggravator, this Court concludes that application of the CCP aggravator did not substantially contribute to Petitioner's sentence.

As noted in *Jennings*, "[t]he primary effect of [this] aggravator [is] to grant the jury and the trial judge authority to give aggravating weight to the facts underpinning CCP." 490 F.3d at 1253-54. The prosecutor summarized the evidence in favor of application of the CCP aggravator as follows:

> The Eddie Nelson robbery, the John Short robbery, a day before – see, those robberies show a course of conduct that took place over a period of time. They show a background. They show what was in the defendant's mind when, at the time he went over to Poteet's.
>
> Again, he lived in the area. He wasn't wearing any kind of device to cover his face or, or, or there was no situation – there was no fact that would indicate that he did not expect to meet up with Poteet. He had called Poteet; asked him to be there. That shows premeditation.
>
> He posted Barbara Perkins across the street. That shows premeditation. Arranged for her to pick him up. That shows premeditation.

You can say, well, yeah, but that shows premeditation for the robbery. What about the murder? Well, the fact that he didn't wear a mask or didn't bring a mask and had made no provisions for the fact that Poteet would recognize him - - after all, he according to Arbisi, he had been down there and talked to him and lived around the corner. That indicates that this was a premeditated plan that took place over a period of time, not only to do the robbery, but also to kill Mr. Poteet.

* * *

Remember, he told Barbara that he knew used car dealers had lots of cash. And as Howard Poteet's son testified, there was that big four by four sign on the street. Spot cash for your car. This was something that Sireci had thought about over a period of time and taken actions to make sure it would work out even before - - I mean, he had gotten - - he didn't - - remember, he didn't have one of these with his car. According to Barbara, he had to go get one some place.

(Ex. I-17 at 2474-77.) The state trial court found the CCP aggravator applicable because:

Defendant murdered John Short during a robbery and afterward told Barbara Perkins he had done so to eliminate a witness. In preparation of the robbery of Poteet Motors he called to insure the victim would remain at the business until he could arrive. He specifically obtained a tire iron which, after having assured the victim's presence, he could only have planned to use as a weapon of violence. The evidence establishes that the murder of Howard Poteet was intended from the very beginning of the robbery plot.

(Ex. I-26 at 3303-04.) Therefore, the bases asserted for the application of the CCP aggravator were Petitioner's prior commission of similar offenses and his plan to rob the car dealership and eliminate any witnesses as evidenced by his taking a weapon to the robbery. This evidence was properly given weight under the pecuniary gain, avoid arrest, and prior felony aggravators. *See Jennings*, 490 F.3d at 1256 (noting that Florida's "prohibition on double counting presupposes that aggravators may sometimes share common facts and circumstances. The state law merger rule can therefore be read as anticipating the *Brown* [*v. Sanders*, 546 U.S. 212 (2006),] rule, as both recognize the principle that no improper aggravation occurs where the same facts can be considered

under a valid, remaining aggravating factor."). The only evidence that could have conceivably been given improper aggravating weight was the fact that Petitioner took a tire iron with him to the robbery. However, even assuming that this fact was improperly weighed, in light of the evidence that (1) the victim was stabbed over fifty times in part to prevent him from implicating Petitioner in his murder and (2) Petitioner had previously been convicted of robbing another person and threatening to kill that person and had also murdered a person in the course of another robbery, this Court cannot conclude that this fact alone was a substantial factor in the determination to impose a sentence of death. In sum, the Court concludes that based on the four valid aggravators and the absence of statutory mitigation, the CCP aggravator did not have a substantial and injurious effect or influence on Petitioner's sentence. Therefore, assuming application of the CCP aggravator was an *ex post facto* violation, the violation was harmless. Accordingly, this claim is denied.

## C. Claim III

Petitioner contends that the trial court erred by refusing to find the existence of the statutory mitigators that (1) he was under the influence of an extreme mental or emotional disturbance when the crime was committed, (2) he lacked the capacity to appreciate the criminality of his conduct or his capacity to conform his conduct to the requirements of law was substantially impaired, and (3) he acted under extreme duress or the substantial domination of another.

Petitioner raised this claim on direct appeal from resentencing. The Supreme Court of Florida denied the claim as follows:

> The decision as to whether a particular mitigating circumstance is

20

established lies with the judge. Reversal is not warranted simply because an appellant draws a different conclusion. *Stano v. State*, 460 So. 2d 890, 894 (Fla. 1984), *cert. denied*, 471 U.S. 1111, 105 S. Ct. 2347, 85 L. Ed. 2d 863 (1985). Further, it is the trial court's duty to resolve conflicts in the evidence, and that determination should be final if supported by competent, substantial evidence. *Id.*

The evidence was clearly insufficient to establish that Sireci acted under extreme duress or the substantial domination of another or that his age of twenty-seven played any part in the murder. There was conflicting testimony on the remaining statutory mitigators. Mental health experts agreed that Sireci suffered from brain damage which probably occurred when he was involved in an automobile accident at the age of sixteen. However, the experts disagreed on the extent and effect of that brain damage. Dr. Lewis testified that Sireci was severely brain injured, functionally retarded, and psychotic and that he could not appreciate the magnitude or consequences of his acts. Dr. Pincus testified that he found very strong evidence of organic brain disease which constrained Sireci's free will. However, State expert witness Dr. Upson opined that Sireci's brain damage had no significant connection to the murder, that Sireci understood the consequences of his behavior, and that he could conform his actions to the requirements of law. A radiologist who testified for the State indicated that Sireci's CAT scan and MRI tests indicated only mild brain injury. In view of the conflicting evidence, the trial judge could properly conclude that the statutory mental mitigating circumstances had not been proven.

Sireci also presented substantial evidence regarding his difficult childhood. Testimony indicated that he was physically and emotionally abused by his father and sexually abused by his mother. The trial judge found nonstatutory mitigation as indicated in the sentencing order:

> In spite of his bleak childhood the Defendant was a hard and steady worker. He manifested a concern for others and was unselfish with his friends and family. He has done well in prison. He has brain damage and has suffered abuse as a child.
>
> The Defendant's brain damage and history of abuse resulting in his having at least two factors common in aggressive violent persons does not establish an uncontrolled propensity for violence nor can it be found to be the cause of the heinous nature of the offense but does cause this court to give lesser weight to that aggravating circumstance.

We find competent, substantial evidence to support the trial court's findings

regarding the mitigating evidence.

*Sireci*, 587 So. 2d at 453-54.

"[T]he Eighth and Fourteenth Amendments require that the sentencer in a capital case consider any evidence which mitigates against the imposition of the death penalty." *Glock v. Moore*, 195 F.3d 625, 637 (11th Cir. 1999) (citing *Lockett v. Ohio*, 438 U.S. 586, 608 (1978)). The Eleventh Circuit has held that

> while sentencing courts may not refuse to consider evidence offered in mitigation, they need not decide that the facts established by that evidence have mitigating force in the context of the case. The Constitution requires that the sentencer be allowed to consider and give effect to evidence offered in mitigation, but it does not dictate the effect that must be given once the evidence is considered; it does not require the sentencer to conclude that a particular fact is mitigating or to give it any particular weight.

*Schwab v. Crosby*, 451 F.3d 1308, 1329-30 (11th Cir. 2006) (citing *Harich v. Wainwright*, 813 F.2d 1082, 1101 (11th Cir.1987), for the proposition that "*Skipper [v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986)], *Eddings [v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed.2d 1 (1982)], and *Lockett [v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978),] require that the defendant be allowed to present all relevant mitigating evidence to the sentencing jury or court . . . . These cases do not require that the sentencing body accept the conclusion that the evidence constitutes a mitigating circumstance or that the mitigating circumstances outweigh the aggravating circumstances.").

"[A] federal habeas corpus court may review a state court factual finding concerning the existence of mitigating circumstances. . . ." *Magwood v. Smith*, 791 F.2d 1438, 1449 (11th Cir.1986). However, the "[t]rial court's findings on mitigating factors are presumed

to be correct. . . and will be upheld if they are supported by the record." *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992) (citing 28 U.S.C. § 2254(d)).

The record establishes that Drs. Lewis and Pincus opined that Petitioner suffered from organic brain damage, and as a result, was under the influence of an extreme mental or emotional disturbance when the crime was committed. (Ex. I-12 at 1583-84; Ex. I-15 at 2147.) Additionally, they both opined that Petitioner's ability to conform his conduct to the requirements of the law was substantially impaired as a result of the brain damage. *Id.* Dr. Upson, the State's mental health expert, agreed that Petitioner suffered from brain damage. Dr. Upson, however, opined that the brain damage did not have any effect on the commission of the murder, except to the extent that once Petitioner started stabbing the victim, he may have had difficulty stopping. (Ex. I-16 at 2272, 2289-92.) Dr. Upson also indicated that he believed that Petitioner understood the difference between right and wrong and understood the consequences of his actions. (Ex. I-17 at 2422, 2424.) Therefore, the state court's finding that no statutory mitigators existed is supported by the record.

Additionally, testimony was provided indicating that Petitioner sought to please individuals, and the defense argued that Petitioner committed the offense because of Barbara Perkins' influence. However, the finder of fact also heard and observed Barbara Perkins and had an opportunity to consider her role in the offense. Moreover, evidence was presented that Petitioner had committed similar crimes in which Barbara Perkins was not involved prior to the relevant offense. The trial court concluded that the evidence demonstrated that Petitioner "was vulnerable to suggestions and the robbery was probably committed to get money for Barbara Perkins but falls short of showing the murders [sic]

were committed while under extreme duress or the substantial domination of another person." (Ex. I-26 at 3305-06.)

The Court's review of the record demonstrates that the trial court fully considered all the mitigating factors offered by Petitioner but, in the light of the evidence presented, refused to find the existence of any statutory mitigators. The state court was not required to accept the mitigating factors. *Atkins*, 965 F.2d at 962 (citing *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990)). Furthermore, Petitioner has not demonstrated by clear and convincing evidence that the state court's finding that no statutory mitigators existed was incorrect. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1). Thus, Petitioner has not demonstrated that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim is denied pursuant to Section 2254(d).

**D.     Claim IV**

Petitioner asserts that Florida's capital sentencing scheme is unconstitutional. Specifically, Petitioner asserts that the HAC aggravator and the pecuniary gain aggravator are vague and overbroad and fail to channel the sentencer's discretion. Additionally, Petitioner asserts that the capital sentencing statute impermissibly shifts the burden of proof. This Court will address each of Petitioner's arguments separately.

**i.     HAC Aggravator**

Petitioner asserted on direct appeal that Florida's capital sentencing scheme was unconstitutional. *See* Ex. I-28 at 71-77. In support of his claim, Petitioner cited prior cases discussing the constitutionality of the HAC aggravator. *Id.* at 72. Respondents contend

that this claim is procedurally barred because Petitioner failed to make the specific arguments made in relation to this claim in the state courts. The Court finds that Petitioner sufficiently presented this claim in the state courts to exhaust it. As such, the Court will address the merits of Petitioner's argument.

In the instant case, the following HAC aggravator instruction was given to the jury:

Heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others. What is intended to be included are those first degree murders where the actual commission of the homicide was accomplished by such additional acts as to set the crime apart from the norm of first degree murders. The conscienceless [sic] or pitiless crime which is unnecessarily torturous to the victim.

If the victim in this case lost consciousness, any event which occurred after unconsciousness began cannot be considered as evidence of the especially wicked, evil, atrocious or cruel nature of the crime. Any event after the death of the victim cannot be considered as evidence of especially wicked, evil, atrocious or cruel nature of the crime. . . .

(Ex. I-17 at 2542-43.)

In *Marquard v. Secretary for Dept. of Corrections*, 429 F. 3d 1278, 1315-17 (11th Cir. 2005), the Eleventh Circuit concluded that a virtually identical HAC instruction was not vague or overbroad. *See also Jennings*, 490 F.3d at 1248-49 (recognizing that an HAC aggravator instruction like the HAC aggravator instruction in the instant case is constitutional). The *Marquard* Court noted that a three part test is employed to determine whether application of the HAC aggravator is constitutional. *Id*. at 1316.

"'First, the appellate courts of the state must have narrowed the meaning of the words by consistently limiting their application to a relatively narrow class of cases, so that their use informs the sentencer of what it must find before it imposes the death penalty.'"

*Id.* (quoting *Lindsey v. Thigpen*, 875 F. 2d 1509, 1514 (11th Cir. 1989)).  In considering this factor, the Eleventh Circuit has held repeatedly that "'Florida has sufficiently limited its "heinous, atrocious, or cruel" aggravating circumstance to pass constitutional scrutiny.'" *Id.* (quoting *Scott v. Singletary*, 38 F. 3d 1547, 1554 (11th Cir. 1994)).

The second factor requires a determination of whether "'the sentencing court . . . made either an explicit finding that the crime was "especially heinous, atrocious or cruel" or an explicit finding that the crime exhibited the narrowing characteristics' implemented by the state courts."  *Id*. (quoting *Lindsey*, 875 F.2d at 1514).  In this case, the record indicates that the sentencing court determined that

> The victim received 55 knife wounds many of which were deep enough to penetrate internal organs.  Some were defensive wounds and his neck was slit.  It is apparent from the physical evidence the victim struggled with the Defendant and was conscious while many of the wounds were inflicted.
>
> * * *
>
> Three days before the Poteet murder the Defendant murdered John Short by stabbing him multiple times and cutting his neck.  Armed with this recent experience and knowledge of Short's suffering he undertook this murder in the exact manner, a manner designed to inflict a high degree of pain with indifference to the suffering of his victim.

(Ex. I-26 at 3302-03.)  Therefore, the sentencing court made the requisite explicit findings and detailed the evidence supporting the HAC aggravator.

The final factor courts must consider is whether the sentencing court's determination as to step two "'subverted the narrowing function of those words by obscuring the boundaries of the class of cases to which they apply.'" *Id*. at 1317 (quoting *Lindsey*, 875 F. 2d at 1514).  "In other words, to reverse under step three, this Court would have to find that the Florida courts' determination that [Petitioner's] conduct was 'unnecessarily

26

torturous to the victim' was clearly erroneous." *Id*. (quoting *Bradley v. Nagle*, 212 F. 3d 559, 571 (11th Cir. 2000)). In light of the evidence that Petitioner stabbed the victim more than fifty times and slit his neck, this Court cannot conclude that the sentencing court's determination was clearly erroneous. Accordingly, the state courts' determination that the HAC aggravator is not unconstitutional and its application of that factor on the evidence in this case are neither contrary to, nor unreasonable applications of, clearly established federal law.

### ii.    Pecuniary Gain

Petitioner summarily asserts that the pecuniary gain aggravator is vague and overbroad. In support of his contention, Petitioner maintains that there was no limiting instruction provided for this aggravator and Florida law requires that this aggravator may only be applied if financial gain was the primary motive for the murder. Respondents assert that the claim is procedurally barred from review by this Court because it was not raised on direct appeal and was subsequently found to be procedurally barred by the state courts in his Rule 3.850 post-conviction motion after resentencing.

As noted *supra*, the United States Supreme Court has determined that in order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365.

The record reveals that Petitioner generally asserted on direct appeal that Florida's capital sentencing scheme was unconstitutional and that the aggravating factors failed to channel the sentencer's discretion. (Ex. I-28 at 71-75.) Petitioner did not raise the specific

argument that the pecuniary gain aggravator instruction was vague and overbroad and failed to channel the sentencer's discretion. *See id.* Therefore, Petitioner's argument on direct appeal did not "fairly present" Petitioner's instant claim that the pecuniary gain instruction failed to contain proper limiting instructions and as such was unconstitutionally vague and overbroad.

Furthermore, Petitioner raised this claim in his Rule 3.850 postconviction motion after his resentencing, and the state courts found the claim to be procedurally barred as it should have been raised on direct appeal. *See* Ex. K-4 at 419-20; *Sireci*, 773 So. 2d at 39 n.9. As noted previously, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. In addition, the federal courts may not address claims that have not been presented in the state court if the state court would have found the claims to be procedurally defaulted . . . ." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). In short, a review of the record establishes that this claim was not raised on direct appeal and was subsequently found to be procedurally barred by the state court. Because the claim was not fairly presented on direct appeal, the state court never had an opportunity to consider it; thus, this portion of the claim is procedurally defaulted.

Because Petitioner failed to properly present this claim to the state court, this Court must disregard the claim unless Petitioner establishes that either of the two exceptions to the procedural default bar exist in this case. *See Henderson*, 353 F.3d at 892. Petitioner has not done so. Here, Petitioner has not alleged or shown that cause and prejudice exists to excuse the default, nor has he supported any claim of "actual innocence" that might support the "fundamental miscarriage of justice" exception. A review of the record reveals

that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, the pecuniary gain portion of this claim is procedurally barred.

Alternatively, the Court notes that Petitioner's claim is precluded by Section 2254(d). To the extent the constitutionality of the pecuniary gain aggravator was arguably challenged on direct appeal, in considering this claim the Supreme Court of Florida did not apply a rule that contradicted the governing law set forth in the cases of the United States Supreme Court. Furthermore, there is no indication that the result reached by the state court was at odds with any United States Supreme Court case which considered "materially indistinguishable facts." Finally, the state court's application of the clearly established law regarding this issue was objectively reasonable.

### iii. Improper Burden Shifting

Petitioner asserts that the jury instructions improperly shifted the burden of proof to him to establish that a sentence of death should not be imposed. The relevant part of the instruction that Petitioner challenges provides, "Should you find sufficient aggravating circumstances do exist, it . . . will then be your duty to determine whether mitigating circumstances exist and that the aggravating circumstances outweigh the mitigating circumstances." (Ex. I-17 at 2544.)

Petitioner raised this claim on direct appeal from his resentencing. The Supreme Court of Florida summarily denied the claim. *Sireci*, 587 So. 2d at 454.

A review of the jury instructions establishes that the burden to prove that the death penalty should not be imposed was not improperly shifted to Petitioner. The jury was instructed:

[I]t is your duty to follow the law that will now be given you by the court and

29

> render to the court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and, if they do, whether they are sufficient to outweigh any mitigating circumstances you are reasonably convinced exist.

(Ex. I-17 at 2539.)  The trial court further explained the potential statutory aggravating circumstances to the jury after which the jurors were told:

> If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole for 25 years.
>
> Should you find sufficient aggravating circumstances do exist, it . . . will then be your duty to determine whether mitigating circumstances exist and that the aggravating circumstances outweigh the mitigating circumstances.

*Id*. at 2544.  The trial court continued by explaining the mitigating circumstances and advised the jury that aggravating circumstances must be established beyond a reasonable doubt, but that mitigating circumstances need not be proven beyond a reasonable doubt. *Id*. at 2545-47.

The Eleventh Circuit has held that virtually identical jury instructions are constitutional.  *See Bertolotti v. Dugger*, 883 F. 2d 1503, 1525 (11th Cir. 1989) (holding "[t]his set of instructions adequately described the plan of Florida's capital-sentencing statute, . . . quite reasonably focused the jury's attention on the circumstances of the offense and the character of the offender, and adequately bridled the jury's discretion."). In denying this claim, Petitioner has not demonstrated that the state court applied a rule that contradicted the governing law set forth in the cases of the United States Supreme Court.  Moreover, Petitioner has not cited to any United States Supreme Court case which considered "materially indistinguishable facts" and reached a result contrary to the state court in this case.  Accordingly, this claim is denied pursuant to Section 2254(d).

30

**E. Claim V**

Petitioner argues that newly discovered evidence establishes that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963). Further, Petitioner asserts that newly discovered evidence demonstrates that he is actually innocent of first degree murder and the death penalty. Specifically, Petitioner asserts newly discovered evidence exists demonstrating that (1) Petitioner had three denim jackets, (2) hair found at the motel where a denim jacket was located belonged to Barbara Perkins ("Perkins"), (3) Perkins' testimony was inconsistent with police reports concerning the amount of money Petitioner took in a prior robbery, (4) Harvey Woodall ("Woodall"), a jailhouse informant, made statements that contradicted the evidence presented at trial regarding the murder, and (5) the State paid for Woodall's hotel liquor tab incurred during the time he was serving as a witness.

Petitioner raised this claim in his first Rule 3.850 postconviction motion after he was resentenced. The Supreme Court of Florida denied the *Brady* claim as follows:

> Sireci alleges that the State, in violation of *Brady* . . . , withheld the following evidence: (1) a property receipt for a denim jacket recovered from his girlfriend, Barbara Perkins, by the Las Vegas Police Department; (2) evidence which would have been used to impeach Perkins; and (3) evidence which would have been used to impeach Harvey Woodall, a cellmate.
>
> The United States Supreme Court, in *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), recently announced the three requirements that a defendant must establish in order to successfully assert a *Brady* violation:
>
> > The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

The Court further explained that prejudice is measured by determining "whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Id.* at 290, 119 S. Ct. 1936 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)). In applying these elements, the evidence must be considered in the context of the entire record. *See State v. Riechmann*, 25 Fla. L. Weekly S163, 777 So. 2d 342, 2000 WL 205094 (Fla. Feb. 24, 2000); *Haliburton v. Singletary*, 691 So. 2d 466, 470 (Fla. 1997).

## 1. Property Receipt

The State argued at trial that Sireci owned two identical denim jackets. According to the State, one of these jackets was stained with the victim's blood and was recovered in an abandoned motel room near the scene of the crime. The second jacket, the State suggested, was seized by the Las Vegas Police Department from Barbara Perkins when she was arrested in Nevada. Both of these jackets were introduced at trial.

Sireci now claims that the State withheld a property receipt, dated February 12, 1976, from the Orange County Sheriff's Department. According to Sireci, the property receipt demonstrates that both of his jackets were seized from Perkins at the time she was arrested in Las Vegas and, therefore, neither could have been the one found in the motel room. Contrary to Sireci's assertions, however, the property receipt only indicates that "one blue denim jacket" was transferred from the Las Vegas Police Department to the Orange County Sheriff's Office. The receipt in no way demonstrates that two jackets were seized from Barbara Perkins. [sic] in Las Vegas. Thus, we find that Sireci's claim as to the property receipt fails to establish a *Brady* violation.

## 2. Impeachment of Barbara Perkins

Sireci also alleges that the State withheld evidence that, contrary to Perkins' testimony at the resentencing that Sireci stole only $30 from a convenience store several days before the Poteet murder, he in fact stole $400, cigarettes, and wine. This contradiction, he argues, shows that her testimony lacked credibility.

First, we clarify that Perkins did not testify that Sireci took $30 from the convenience store. Her testimony at the resentencing was that "it seemed like a lot, about fifty or sixty, or more." Second, and of greater importance, even assuming that this evidence would have been used to impeach Perkins, we cannot logically conclude that showing a lack of credibility in her testimony at the resentencing on an entirely unrelated crime

can undermine confidence in the verdict of guilt entered at his trial for Mr. Poteet's murder.

### 3. Impeachment of Harvey Woodall

Sireci argues that the State withheld information contained in a statement by Woodall given to the police which would have been used to impeach Woodall's testimony at trial. In this statement, Woodall states that Sireci told him he was wearing a green sweatshirt at the time of the murder, thus undermining the State's theory that he wore a denim jacket. The jacket found in the nearby abandoned motel played an important role in the guilt phase. However, it seems somewhat of a stretch to refer to it, as appellant does, as the "centerpiece" of the State's case.

Specifically, and as pointed out by the trial court below, at least four different people testified at trial to conversations with Sireci in which he confessed to the murder and robbery of Mr. Poteet. An independent review of the record indicates that, in total, seven different people testified that appellant confessed to them that he had murdered Howard Poteet.[FN16] Those confessions were all consistent, detailed accounts of the murder. Thus, we find that there is no reasonable probability that this evidence could "put [this] whole case in such a different light as to undermine confidence in the verdict." *Strickler* (quoting *Kyles*, 514 U.S. at 435, 115 S. Ct. 1555).

> FN16. Specifically, the following people testified that Sireci admitted killing Mr. Poteet: (1) Barbara Perkins-girlfriend; (2) Donald Holtzinger-cell mate; (3) Peter Sireci-brother; (4) Harvey Woodall-cell mate; (5) Bonnie Lee Arnold-friend; (6) David Wilson-brother in law; (7) Gary Arbisi-detective.

Sireci also maintains that the State provided favors to Woodall in exchange for his testimony. Namely, Sireci suggests the possibility that the state attorney responsible for the guilt phase of the proceedings paid the hotel bill for the accommodations used by Woodall during trial, which included charges for alcoholic beverages. This claim is entirely without merit. Appellant argues that " [i]f the State Attorney paid this bill for Mr. Woodall, this information would have undermined his credibility as a witness." (Emphasis supplied.) Appellant is, however, unable to tie this allegation to any evidence. Moreover, even if this allegation were true, which appellant does not suggest given his use of the word "if," and even if Woodall's entire credibility would have been diminished by this fact, the State still introduced six other confessions. Thus, we again find no reasonable probability that this information, if in fact accurate, would undermine our confidence in the verdict.

*Sireci*, 773 So. 2d at 41-43.

The Supreme Court of Florida further denied Petitioner's claim of newly discovered evidence, finding that it was time barred and otherwise without merit. In so ruling, the Court found as follows:

> Sireci argues that DNA testing would be able to provide better identification with regard to hairs found in the towels at the motel which had a role in the proceedings. This, according to Sireci, would demonstrate that the involvement of Barbara Perkins in Mr. Poteet's murder was more than she led the jury to believe.[FN18]
>
>> FN18. To be sure, Sireci is not suggesting that DNA tests which have already been performed have indicated that the hairs found match Perkins'.
>
> This Court has held that to obtain relief based on a newly discovered evidence claim a defendant must satisfy the following two requirements:
>
>> First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by use of due diligence."
>
>> Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial....
>
>> In considering the second prong, the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary bars to admissibility. . . . The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
>
> *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (citations omitted).
>
> DNA typing was recognized in this state as a valid test as early as 1988. *See Zeigler v. State*, 654 So. 2d 1162, 1164 (Fla.1995) (citing *Andrews v. State*, 533 So. 2d 841 (Fla. 5th DCA 1988)). In *Zeigler*, we held that the two-year period for filing a 3.850 motion based on newly discovered evidence begins to run on a defendant's postconviction request for DNA testing when the testing method became available. *See* 654 So. 2d at 1164; *see also*

> *Adams v. State*, 543 So. 2d 1244 (Fla. 1989) (holding that motion for postconviction relief based on newly discovered evidence must be raised within two years of such discovery). The final amended version of Sireci's 3.850 motion was filed in 1997-approximately nine years after DNA testing was recognized in Florida. Thus, this portion of the claim is time-barred.
>
> However, even assuming that this claim were not time-barred, and assuming further that the DNA results would indicate that the hairs in the towels in the abandoned motel room belonged to Perkins, we cannot determine that this evidence would "probably produce an acquittal on retrial." *Jones*, 709 So. 2d at 521. At trial, Perkins admitted to having picked up Sireci at the abandoned motel; thus, it is not difficult to imagine that she might have actually gone inside the room. This evidence, however, in no way exculpates Sireci. Thus, we cannot agree that it would probably produce an acquittal on retrial.

*Sireci*, 773 So. 2d at 43-44.

Because this issue was adjudicated on the merits in the state courts, this Court may grant habeas corpus relief only if the state courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). The Court is cognizant that it may not substitute its judgment on this issue for judgments made by the state courts. Moreover, this Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. *Bell*, 535 U.S. at 694. Relief is only warranted if the state court's application was objectively unreasonable. *Id.*

To establish a *Brady* violation, the petitioner must prove that: "(1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *LeCroy v. Secretary, Florida Dept.*

*of Corrections*, 421 F. 3d 1237, 1268 (11th Cir. 2005) *(*citing *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989)).  As the United States Supreme Court has stated, "evidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different."  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).  Further, "*Brady* does not require the government to turn over information which, with any reasonable diligence, the defendant can obtain himself."  *Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984) (quotation omitted).

In assessing this claim, the state court correctly identified the governing legal principle set forth in *Brady*.  Further, Petitioner has not cited to any decision of the United States Supreme Court that, faced with materially indistinguishable facts, reached a decision different from the state court in this case.  Therefore, the state court's decision was not "contrary to" governing United States Supreme Court precedent.

Moreover, the Court finds that the state court's denial of the claim was supported by the record and was objectively reasonable.  Even assuming that there was "new evidence" and Petitioner was unable to discover this evidence with due diligence, he has not demonstrated that the claimed new evidence is material.  In other words, Petitioner has not established that a reasonable probability exists that had this evidence been disclosed the result at trial would have been different.  During the guilt and penalty phases, the testimony

of five witnesses was introduced that Petitioner explicitly admitted that he stabbed and killed the victim. (Exs. A-16 at 194-95; A-18 at 421, 434-35, 453-56, 493.) Thus, to the extent this allegedly newly discovered evidence is arguably exculpatory, Petitioner has not demonstrated how it negates the overwhelming evidence presented of his guilt. Accordingly, this claim is denied pursuant to Section 2254(d).

## F.    Claim VI

Petitioner contends that appellate counsel rendered ineffective assistance by failing to assert on direct appeal that the avoid arrest aggravator was arbitrarily and capriciously applied in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments. In support of this claim, Petitioner asserts that there was insufficient evidence to establish that the murder was committed for the purpose of avoiding or preventing a lawful arrest by eliminating a witness.

Petitioner raised this claim in his state habeas petition. The Supreme Court of Florida denied the claim, reasoning that appellate counsel did in fact raise this claim on Petitioner's initial direct appeal and there was sufficient evidence to support the application of the aggravator. Specifically, the Court stated:

> Despite petitioner's contentions to the contrary, it is nonetheless plain here that this claim was indeed asserted and rejected by this Court on Mr. Sireci's original appeal. *See Sireci v. State*, 399 So. 2d 964, 971 (Fla. 1981) (rejecting Mr. Sireci's claim that the aggravators found by the trial court were not proven beyond a reasonable doubt). Thus, raising it again here as an ineffective assistance of counsel claim is improper. *See Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990).
>
> Additionally, we are certain that there was competent evidence before the trial court establishing that the dominant motive for the murder here was avoidance of arrest. The import of the testimony given by David Wilson at trial is plain:

Q: What did you ask Mr. Sireci?

A: How come he stabbed the people, the person so many times.

Q: What did he answer?

A: That he believed in leaving no witnesses.

Additionally, Harvey Woodall testified as follows:

Q: Did he know whether or not the man was dead?

A: Was dead when he left?

Q: Yes, Sir.

A: Yeah, he knew he was dead. He said he wasn't going to leave nobody who could identify him, no witnesses to testify against him.

Based upon the record before us, it is clear to this Court that there was sufficient evidence before the trial court to establish that the murder here was committed for the purpose of avoiding or preventing a lawful arrest by eliminating a witness. Therefore, even if the rejection of this claim on petitioner's direct appeal to this Court did not operate to bar its further assertion in this cause, it is without merit. As the underlying assertion of error is meritless, the claim that appellate counsel was ineffective must also fail. *See Engle v. Dugger*, 576 So. 2d 696 (Fla. 1991).

*Sireci*, 825 So. 2d at 885.

Even if this issue had not been raised on appeal, there is no underlying merit to the claim Petitioner alleges his counsel failed to raise. Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." *See Miller v. Dugger,* 858 F.2d 1536, 1538 (11th Cir. 1988); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).

The United States Supreme Court has held that "federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at

38

most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). To determine whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to constitute a violation of the federal constitution, federal courts must apply the "rational factfinder" standard of review enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id.* at 781. Pursuant to *Jackson*, federal habeas courts may not grant relief on such claims if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319).

The Supreme Court of Florida has held:

> Application of the "avoiding lawful arrest" aggravator requires strong proof that the dominant motive for the murder was witness elimination. *See Mahn v. State*, 714 So. 2d at 402. This aggravator has been applied to cases in which the evidence supported a finding that the victim would have summoned the authorities and in cases where the defendant had expressed an apprehension regarding arrest. *See, e.g., Sliney v. State*, 699 So. 2d 662 (Fla. 1997) (aggravator justified where defendant testified that his accomplice told him that "Sliney would have to kill the victim because '[s]omebody will find out or something'"); *Peterka v. State*, 640 So. 2d 59 (Fla. 1994) (aggravator applicable where defendant, who feared incarceration, had established a new identity which the victim threatened to expose).

*Zack v. State*, 753 So. 2d 9, 20 (Fla. 2000). In the instant case, as noted by the state courts, witnesses testified at Petitioner's resentencing hearing that Petitioner told them he killed the victim because he did not want to leave a witness who could testify against him.[5]

---

[5]Additionally, Eddie Nelson testified that during a robbery perpetrated by Petitioner in 1970 that Petitioner told Nelson he was going to have to kill him to prevent him from telling anyone. (Ex. I-8 at 941-42.)

(Ex. I-10 at 1195, 1209.)  As such, this Court finds that a rational trier of fact could have found that application of the avoid arrest aggravator was justified.  Petitioner has failed to demonstrate, therefore, that he was prejudiced by appellate counsel's failure to raise this issue on direct appeal from his resentencing proceeding.

The Court concludes that the state courts' determination that appellate counsel was not ineffective for failing to challenge the application of the avoid arrest aggravator is neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner also has not demonstrated that the state courts made an unreasonable determination of the facts.  Nothing in the record suggests that the state court's factual findings were unreasonable.  Further, Petitioner has failed to rebut the presumption of correctness accorded the state court's factual findings.  Accordingly, claim six must be denied pursuant to Section 2254(d).

## G.    Claim VII

Petitioner maintains that appellate counsel rendered ineffective assistance by failing to raise claims on direct appeal that the trial court erred in finding the avoid arrest aggravator, the CCP aggravator, and the pecuniary gain aggravator based on the same facts.  Petitioner maintains that the trial court's finding of these aggravators based on the same facts rendered his sentence of death arbitrary and capricious.

Petitioner raised this claim in his state habeas petition.  The Supreme Court of Florida denied relief as follows:

> In his second claim, the petitioner asserts that the trial court unconstitutionally based its findings of the cold, calculated, and premeditated aggravator; the avoiding or preventing lawful arrest aggravator; and the in the course of a robbery or for pecuniary gain aggravator upon the same facts. Since petitioner's appellate counsel did not raise this issue on direct appeal,

Mr. Sireci now asserts that the assistance rendered by his appellate attorney was ineffective.

In *Banks v. State*, 700 So. 2d 363 (Fla. 1997), we enunciated the proper analysis concerning the duplication of aggravating factors:

> Improper doubling occurs when both aggravators rely on the same essential feature or aspect of the crime. However, there is no reason why the facts in a given case may not support multiple aggravating factors so long as they are separate and distinct aggravators and not merely restatements of each other, as in murder committed during a burglary or robbery and murder for pecuniary gain, or murder committed to avoid arrest and murder committed to hinder law enforcement.

*Id.* at 367 (citation omitted). Hence, the focus in an examination of a claim of unconstitutional doubling is on the particular aggravators themselves, as opposed to whether different and independent underlying facts support each separate aggravating factor.

In the instant case, the three aggravators Mr. Sireci challenges are the cold, calculated, and premeditated aggravator; the avoiding or preventing a lawful arrest aggravator; and the in the course of a robbery or for pecuniary gain aggravator. In accordance with *Banks*, all of these aggravators are distinct from each other. Further, even though the aggravators are all based upon interrelated facts, the focus of each aggravator is upon a different facet or motivation of Mr. Sireci's crime.

The avoiding or preventing a lawful arrest aggravator, found based upon a witness elimination rationale, focuses on the petitioner's motive for murdering the victim. In sharp contrast, in finding that Mr. Sireci's acts were cold, calculated, and premeditated, the focus of the trial court was upon the manner in which the crime was executed.[FN2] Finally, the finding that the murder was committed in the course of a robbery and for pecuniary gain is a conclusion regarding the context in which the murder occurred-during a robbery.

> FN2. This motive-method dichotomy mirrors the rationale we relied upon in upholding the death sentence in *Stein v. State*, 632 So. 2d 1361, 1366 (Fla. 1994).

Upon close scrutiny, it is clear that this claim is without merit. Therefore, appellate counsel cannot be faulted for not raising it before this Court on direct review. *See Engle*, 576 So. 2d at 703-04. Counsel's assistance was not ineffective, and this Court remains confident that the

correct result was attained.

*Sireci*, 825 So. 2d at 886.

The record reflects that the avoid arrest aggravator was found based on evidence that Petitioner indicated that the reason he killed the victim was to eliminate him as a witness and thereby avoid arrest. The state court's finding that the CCP aggravator applied was premised on Petitioner's actions in (1) calling the victim prior to the murder to insure he was present when Petitioner arrived, (2) taking a tire iron to the scene of the crime, and (3) planning to kill the victim after the robbery. Finally, the state court's application of the pecuniary gain aggravator was premised on evidence that the murder occurred during the course of Petitioner robbing the victim.

Although the evidence supporting these aggravators may be somewhat interrelated, there is no indication that these aggravators are duplicative. Moreover, Petitioner has not cited to any Supreme Court precedent that is contrary to the state court's determination that the use of these aggravators resulted in doubling and is therefore unconstitutional. As noted above, the Supreme Court of Florida has upheld the use of these aggravators, and counsel cannot be deemed deficient for failing to raise a non-meritorious claim. Accordingly, this claim is denied pursuant to Section 2254(d).

### H.    Claim VIII

Petitioner asserts that appellate counsel rendered ineffective assistance by failing to argue that the trial court erred by requiring Petitioner to be shackled during the resentencing proceeding. In support of this claim, Petitioner filed an affidavit in this Court stating that he was restrained by a belly chain and leg irons which made noise and could be heard in the courtroom. (Doc. No. 56-2 at 1-2.) Petitioner further attests that he believes

that some of the jurors were able to see his shackles during the first two days of the resentencing proceeding. *Id*. at 2.

Petitioner raised this claim in his state habeas petition. (Ex. L-1 at 20-21.) The Supreme Court of Florida concluded Petitioner failed to establish he was prejudiced. In so ruling, the Court reasoned:

> In the instant case, there is nothing in the record that leads us to conclude that the jury ever saw Mr. Sireci in restraints. Indeed, the trial court here made every effort to keep the petitioner's restraints from being viewed by the jury by placing tables in front of his seat. Additionally, the trial court certainly had justification for restraining the petitioner- an alleged attempt by the petitioner to have his brother-in-law killed so that he could not testify for the State. *See Sireci v. State*, 399 So. 2d 964, 968 (Fla. 1981). Thus, the instant case is much like *Correll v. Dugger*, 558 So. 2d 422 (Fla. 1990), where this Court held that appellate counsel could not be faulted for not complaining of the restraints placed on his client at trial. There, as here, the trial court concluded that the defendant was a security risk, placed items in front of the defense counsel table, and had the defendant shackled. *See Id*. at 424. The longstanding principle that trial judges must have discretion to properly manage their courtrooms, in combination with a complete absence of evidence indicating any prejudice to the petitioner, requires this Court to deem this argument without merit.

*Sireci*, 825 So. 2d at 888 (footnote omitted).

The United States Supreme Court held in *Deck v. Missouri*, 544 U.S. 622 (2005), that the use of shackles during the penalty phase of a capital trial, absent a specific finding by the court that security needs warrant the shackling, violates a defendant's due process rights unless the State demonstrates beyond a reasonable doubt that the use of shackles did not contribute to the verdict. The Eleventh Circuit Court of Appeals, however, has held that *Deck* establishes a new rule of constitutional law that does not apply retroactively. *See Marquard*, 429 F.3d at 1310-14. The *Marquard* Court concluded that the petitioner in that case failed to establish that his alleged shackling during the penalty phase of his trial in

1993 violated his federal constitutional rights because *Deck* was not applicable retroactively. *Id.* at 1310-11.

Furthermore, in denying the petitioner's claim of ineffective assistance of counsel based on counsel's failure to object to the use of shackles, the Eleventh Circuit concluded that trial counsel was not deficient for failing to anticipate the ruling in *Deck*. *Id.* at 1313. The Court noted that "'[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'" *Id.* (quoting *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994)). The Court also indicated that to establish prejudice in such cases the petitioner "must show a reasonable probability that, absent his being shackled, the sentencer would have concluded that the balance of aggravating factors and mitigating factors did not warrant death and would have imposed a life sentence." *Id.* (citing *Strickland*, 466 U.S. at 695). The *Marquard* Court determined that the petitioner failed to demonstrate prejudice "given the brutal, premeditated murder, the unanimous jury recommendation of death, and the four aggravating and no statutory mitigating circumstances of this case. . . ." *Id.* at 1314.

In the instant case, Petitioner was shackled during his resentencing proceeding in 1990. Therefore, the constitutional right enunciated in *Deck* had not been established, and appellate counsel cannot be deemed deficient for failing to assert Petitioner's constitutional right to due process had been violated based on the use of shackles. Moreover, the record indicates that the trial court took precautions to ensure that the jury did not see the shackles.[6] Finally, as discussed above, at least three aggravators were found to exist and

---

[6]Although Petitioner in the instant action filed an affidavit attesting that he believes the jury may have seen the shackles, he did not file such an affidavit in the

no statutory mitigators were found to exist.  Although nonstatutory mitigators were found to exist, this Court concludes that the state court's determination that the outcome of the proceeding would not have been different absent the use of shackles is neither contrary, to nor an unreasonable application of, clearly established federal law.  Accordingly, claim eight is denied pursuant to Section 2254(d).

## I.     Claim IX

Petitioner maintains that appellate counsel rendered ineffective assistance by failing to assert that Florida's death penalty statute is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   In support of this claim, Petitioner argues that appellate counsel failed to raise this issue on appeal despite the fact that he filed a motion to declare Section 921.151, Florida Statutes unconstitutional because the indictment failed to charge the aggravating circumstances as elements of the offense.

Petitioner raised this claim in his state habeas petition.  The Supreme Court of Florida denied relief, concluding that Florida's capital sentencing statute does not violate *Apprendi*.  *Sireci*, 825 So. 2d at 888.

In *Apprendi*, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  Subsequently, the Court in *Ring v. Arizona*, 536 U.S. 584 (2002), expanded its ruling in

---

state courts.  Thus, the state courts did not have an opportunity to consider this evidence.  As such, this Court will not consider Petitioner's affidavit in resolving this claim.  Regardless, however, if this Court considered the affidavit as evidence, Petitioner would not be entitled to relief because appellate counsel was not deficient for failing to raise a then non-existent constitutional right.

*Apprendi* to the context of capital punishment and held that aggravating factors that justify an increase in the maximum punishment for first degree murder from life imprisonment to death become elements of a greater offense and must be found to exist beyond a reasonable doubt by a jury. *Ring*, 536 U.S. at 609. However, neither *Apprendi* nor *Ring* applies retroactively to cases that were already final on direct appeal at the time those decisions were rendered. *See Schriro v. Summerlin*, 542 U.S. 348, 358 (2004); *see also Zeigler v. Crosby*, 345 F.3d 1300, 1312 n.12 (11th Cir. 2003) (noting that "neither *Apprendi* nor *Ring* applies retroactively on collateral review to convictions that became final before they were decided.").

In the instant case, Petitioner's case became final on direct appeal in 1992, respectively eight and ten years before the United States Supreme Court's decisions in *Apprendi* and *Ring*. Therefore, at the time Petitioner was sentenced, neither *Apprendi* nor *Ring* was applicable. Eleventh Circuit precedent prohibits any argument "that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).

Furthermore, the Supreme Court of Florida has recognized that the maximum penalty for first degree murder under Florida's sentencing scheme is death. *See Mills v. Moore*, 786 So. 2d 532, 536-38 (Fla.), *cert. denied*, 532 U.S. 1015 (2001). Likewise, the Supreme Court of Florida has consistently denied challenges premised on *Ring*, concluding that Florida's sentencing scheme complies with the Sixth Amendment. *See, e.g., Kormondy v. State*, 845 So. 2d 41, 54 (Fla. 2003) (concluding that *Ring* does not require either notice of the aggravating factors on which the State will rely at sentencing or a special verdict form

evidencing the aggravating factors found by the jury); *Bottoson v. Moore*, 833 So. 2d 693 (Fla.), *cert. denied*, 537 U.S. 1070 (2002); *King v. Moore*, 831 So. 2d 143 (Fla.), *cert. denied*, 537 U.S. 1067 (2002). Petitioner has not demonstrated that the state court's finding that its capital sentencing scheme comports with constitutional requirements is either contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, has not established that appellate counsel performed deficiently by failing to raise this issue on appeal. Therefore, this claim is denied pursuant to Section 2254(d).

**J.     Claim X**

Petitioner asserts that the combination of procedural and substantive errors deprived him of a fair trial and penalty phase. The Eleventh Circuit Court of Appeals has recognized that in reviewing a habeas petition, "[a] piecemeal review of each incident does not end our inquiry. We must consider the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under our Constitution." *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983). After reviewing the proceedings and considering the claims collectively, this Court cannot say that the guilt or penalty phase of Petitioner's "trial, as a whole, was fundamentally unfair and outside the bounds of the Constitution." *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004). Therefore, this claim must be denied.

**K.     Claim XI**

Petitioner contends that he may be incompetent at the time he is scheduled to be executed and therefore his execution would violate the Eighth Amendment. Petitioner has not raised this claim in the state courts as it is not ripe. The United States Supreme Court

had held that a *Ford*[7] claim does not become ripe until the prisoner's execution is imminent. *See Panetti v. Quarterman*, 127 S. Ct. 2842, 2854-55 (2007). Thus, this Court dismisses claim eleven without prejudice to Petitioner's right to raise it again when the issue becomes ripe for adjudication.

## L.   Claim XII

Petitioner asserts that the state court's denial of his motion for access to DNA testing pursuant to Florida Rule of Criminal Procedure 3.853 violates his Fifth and Fourteenth Amendment rights. Specifically, Petitioner maintains that he should have been provided access to the hair found on the victim's socks, to a jacket which had blood on it, and hair found in a motel room where the jacket was found. Petitioner maintains that testing of the hair and blood would establish that he is innocent of the murder and not subject to the death penalty.

In denying Petitioner's Rule 3.853 motion, the Supreme Court of Florida found as follows:

> He contends that DNA testing would show the following: (a) that the hair on Poteet's sock was not Sireci's hair; (b) that the blood on the denim jacket found in the motel room was not Poteet's blood; and (c) that hairs found on towels in the motel room were Perkins's hairs. Sireci contends that this proposed DNA evidence satisfies the "reasonable probability" standard. We disagree.
>
> . . . [T]he testing of blood on the denim jacket was not asserted by Sireci as an issue in his present rule 3.853 motion and is procedurally barred at this point. [Additionally], the Court has already addressed the testing of hairs on the towels and has decided this issue adversely to Sireci. Finally, we conclude that, in light of the other evidence of guilt, there is no reasonable

---

[7]*Ford v. Wainwright*, 477 U.S. 399 (1986) (holding that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.").

probability that Sireci would have been acquitted or received a lesser sentence if the State had not introduced into evidence the hair on Poteet's sock. As we have noted, seven witnesses testified that Sireci admitted to them that he killed Poteet. We find no error in this regard. *See generally Cole v. State*, 895 So. 2d 398 (Fla. 2004); *Tompkins v. State*, 872 So. 2d 230 (Fla. 2004); *Hitchcock v. State*, 866 So. 2d 23 (Fla. 2004); *Robinson v. State*, 865 So. 2d 1259 (Fla. 2004); *King v. State*, 808 So. 2d 1237 (Fla. 2002). Sireci's remaining claims are without merit.

*Sireci*, 908 So. 2d at 325-26.

To the extent Petitioner is alleging a violation of a right conferred by a Florida statute, his claim is not cognizable on habeas review.[8] *See* 28 U.S.C. § 2254(d)(1). "Furthermore, the Supreme Court has not established, clearly or otherwise, a constitutional right to postconviction DNA testing." *Shenouda v. Breslin*, 2004 WL 1918805, *6 (E.D.N.Y.2004) (comparing *Harvey v. Horan*, 278 F. 3d 370, 375-77 (4th Cir. 2002), with *Godschalk v. Montgomery County Dist. Attorney's Office*, 177 F. Supp. 2d 366, 370 (E.D. Pa. 2001)); *see also Alley v. Key*, 431 F. Supp. 2d 790 (W.D. Tenn. 2006) (holding that a death-row inmate had no post-conviction constitutional right to biological evidence used at trial for purposes of DNA testing).

Moreover, even assuming such a right does exist, Petitioner has not demonstrated that he is entitled to DNA testing. The Eleventh Circuit has held that there is "no valid due process right of post-conviction access to the biological evidence under *Brady* and its progeny in order to retest that evidence under new technology." *Grayson*, 460 F.3d at

---

[8]The Court notes that the Eleventh Circuit has held that "claims seeking post-conviction access to biological evidence for DNA testing purposes may be brought as a § 1983 action." *Grayson v. King*, 460 F.3d 1328, 1336 (11th Cir. 2006) (citing *Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002)).

1338. Furthermore, this Court denied Petitioner's *Brady* claim *supra*.

To the extent Petitioner relies on *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)*,* to support his claim, Petitioner has not demonstrated he is entitled to relief. Pursuant to *Mathews*, when the government seeks to deprive an individual of a liberty or property interest within the context of the Fifth and Fourteenth Amendments, courts must evaluate the following factors to determine what administrative safeguards are mandated:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. "*Mathews* applies only where an individual has a liberty or property interest that the government seeks to eliminate, and the *Mathews* test concerns the administrative procedures required." *Grayson*, 460 F.3d at 1340. The Eleventh Circuit has not determined whether *Mathews* applies in cases like the instant one, but instead assumes that it does and applies the test set forth in *Mathews*. *Id*. at 1341.

In considering the *Mathews* factors, this Court finds that Petitioner has not demonstrated that he is entitled to the DNA evidence. In so ruling, the Court finds that the second and third *Mathews* factors weigh heavily against Petitioner's alleged private interest.

The second *Mathews* factor requires consideration of "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. With respect to the procedures used, Petitioner previously received a fair guilt and penalty

phase proceeding, direct appeals, and numerous state post-conviction proceedings. His liberty interest in his life has been litigated extensively. As discussed *supra* in claim five, Petitioner has not demonstrated that it is probable that the results of the DNA testing would exculpate Petitioner of the offense as seven people testified that Petitioner admitted murdering the victim. Therefore, the non-biological evidence against Petitioner is overwhelming. As such, the risk of an erroneous deprivation of Petitioner's purported liberty interest and the probable value of his post-conviction access to the biological evidence are minimal.

With respect to the third factor, the State "has a strong interest in the finality of duly adjudicated criminal judgments." *Grayson*, 460 F.3d at 1342. "Compelling interests- *e.g.*, guarding against a flood of requests, protecting the finality of convictions, and ensuring closure for victims and survivors- support the State's position in this case." *Id*. As such, the third factor weighs heavily against Petitioner's claim. Accordingly, the Court concludes that this claim is denied pursuant to Section 2254(d).

## V.      CONCLUSION

The Court finds that none of the claims raised in the instant petition have merit or require a hearing in this Court. Any of Petitioner's allegations not specifically addressed herein are determined to be without merit. The Court determines that the petition must be denied and that this case must be dismissed with prejudice.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus filed by Henry Perry Sireci

(Doc. No. 38) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment accordingly and is directed to

close this case.

**DONE AND ORDERED** at Orlando, Florida, this 12th day of March 2009.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sc 3/12
Counsel of Record